# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAWN HAMPTON,** | : | **CIVIL NO. 1:14-CV-1367** |
| Plaintiff | : | **(Chief Judge Conner)** |
| v. | : | |
| **JOHN WETZEL,** *et al.*, | : | |
| Defendants | : | |

## **MEMORANDUM**

Plaintiff Shawn Hampton ("Hampton"), an inmate currently confined at the Rockview State Correctional Institution in Bellefonte, Pennsylvania ("SCI-Rockview"), commenced this action on July 17, 2014 pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding *via* an amended complaint, wherein Hampton alleges that defendants' failure to provide him adequate medical services violated his rights under the Eighth and Fourteenth Amendments, and the Americans with Disabilities Act ("ADA"). (Doc. 13). Named as defendants are the following employees of the Pennsylvania Department of Corrections: Wetzel, Williams, Harpster, Glunt and McHenry. Also named as defendants are Bernard and Koltay[1], physician assistants at SCI-Rockview, and Corizon Health Care Service.

Before the court is a motion (Doc. 29) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or for summary judgment pursuant to Federal Rule of Civil Procedure 56, by Corizon, and a motion (Doc. 30) to dismiss pursuant to Federal

---

[1] Incorrectly identified in the amended complaint as Kopak.

Rule of Civil Procedure 12(b)(6) by defendants Bernard and Koltay. For the reasons set forth below, defendant Corizon's motion to dismiss will be granted. The motion to dismiss by defendants Bernard and Koltay will be granted in part and denied in part.

I. **Motion to Dismiss Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step,

2

"the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## II. **Allegations of the Amended Complaint**

Hampton alleges that he was diagnosed with degenerating disc disorder and carpal tunnel syndrome. (Doc. 13, ¶ 1). For these conditions, he was prescribed a back brace, wrist brace, and pain medication. (Id. at ¶¶ 1, 2).

Hampton was sent to the Restricted Housing Unit ("RHU"), where defendant McHenry allegedly discarded some of his property, including his braces, and failed to issue a confiscated items receipt for the braces. (Id. at ¶¶ 3, 4). Hampton made several unsuccessful attempts to replace his braces. (Id.) Hampton's requests to replace his braces were allegedly denied by defendants Bernard and Koltay because he did not have a confiscated items receipt. (Id. at ¶ 6). Hampton suffered from

3

pain during the months without his braces, and his activity level decreased. (Id. at ¶ 7). Specifically, he asserts that he was unable to regularly write to his family and friends due to the pain and cramping in his wrist. (Id. at ¶ 8).

During a sick call visit, defendant Bernard allegedly advised Hampton to sign up for activities to help alleviate his back pain. (Id. at ¶ 9). Hampton thereafter signed up for gym sessions, however his request to participate was denied by defendant Harpster due to his "no weightlifting" restriction. (Id. at ¶ 11). Hampton then signed up for cardio sessions, but his request was again denied by defendant Harpster. (Id. at ¶ 12). Defendant Harpster advised Hampton to have his medical restrictions lifted if he wished to participate in these specific programs. (Id. at ¶ 13). Defendants Williams, Koltay and Bernard allegedly informed Hampton that he must have his medical restrictions lifted if he wished participate in particular workout sessions. (Id. at ¶ 14).

The medical defendants changed Hampton's restriction to "Passive Sports Only." (Id. at ¶ 15). However, when Hampton attempted to sign up for Passive Sports Sessions, a prison staff member advised him that the institution restricted eligibility for the Passive Sports Sessions to inmates over fifty years of age; this age requirement rendered Hampton ineligible. (Id. at ¶ 16). Hampton claims that the institution lifted this age restriction, substituting only the requirement that the participating inmate be on General Labor Pool (including unemployment) or assigned a job. (Id. at ¶ 29). Unfortunately, Hampton did not have such a

4

classification, and the institution again denied him participation in the Passive Sports Sessions. (Id. at ¶ 30).

During the relevant time frame, Hampton was treated by Dr. Ekizian for his chronic pain. (Id. at ¶ 18). Dr. Ekizian recommended physical therapy, reordered Hampton's back brace, and prescribed extra strength Tylenol. (Id. at ¶ 19). Hampton participated in the rehabilitation sessions, which were conducted in the same room as the cardio sessions. (Id. at ¶ 21).

At some point thereafter, Hampton alleges that defendant Bernard discontinued his pain medication and instructed him to purchase the medication from the commissary. (Id. at ¶ 25). Hampton allegedly told defendant Bernard that he could not afford the medication through commissary. (Id.)

Lastly, Hampton claims that defendant Corizon used a vendor with poor-quality equipment that was not effective in relieving his pain. (Id. at ¶ 27). He states that defendant Corizon nevertheless collected the co-payment for his treatment. (Id. at ¶¶ 26, 27).

### III. Corizon's Motion to Dismiss

In the amended complaint, Hampton names "Corizon" as a defendant. (Doc. 13, at 1). Corizon, the entity that provides medical services to SCI-Rockview, seeks dismissal based on Hampton's failure to state a claim. (Doc. 32). To the extent that Hampton attempts to establish liability against Corizon solely as the entity responsible for providing health care services to the population at SCI-Rockview,

and as the employer of any individuals that allegedly failed to provide adequate health care, his claims must be dismissed.

A private entity which contracts with the state to perform a traditional state function, such as providing medical services in correctional facilities, may be sued under § 1983 as one acting "under color of state law." West v. Atkins, 487 U.S. 42, 54 (1988); Donnell v. Corr. Health Servs., Inc., 405 F. App'x 617, 622 n. 5 (3d Cir. 2010). For § 1983 purposes, Corizon "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability." Natale v. Camden County Corrections Facility, 318 F.3d 575, 584 (3d Cir. 2003). Rather, to establish a viable § 1983 claim against a private corporate entity such as Corizon, a plaintiff must allege that the entity had a policy, practice, or custom which caused injury to the plaintiff. See Adonai-Adoni v. King, 2009 WL 890683, *2 (E.D. Pa. 2009) (noting that a private medical provider can only be liable under § 1983 if the claim rests upon some policy, practice or custom); see also Carpenter v. Kloptoski, 2010 WL 891825, *8 (M.D. Pa. 2010) (concluding that a § 1983 claim against a private medical service solely on the basis that it was responsible for providing health care is subject to dismissal). Mere identification of a policy or custom is not enough to establish liability; a plaintiff must also establish causation. In this regard, a plaintiff carries the burden of demonstrating a "plausible nexus" or "affirmative link" between the health care provider's custom or policy and the constitutional deprivation at issue. Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). As such, there is no liability for the alleged misconduct of employees absent a link or nexus between the custom or policy and the employee's misconduct because such liability

would be predicated upon the doctrine of *respondeat superior*. <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 691 (1978).

For purposes of § 1983 analysis, a policy is made when a decision-maker with final authority to establish such a policy issues an official proclamation, policy or edict. See <u>Andres v. City of Phila.</u>, 895 F.2d 1469, 1480 (3d Cir.1990); <u>Unterberg v. Corr. Med. Sys., Inc.</u>, 799 F.Supp. 490, 497-98 (E.D. Pa. 1992). A custom on the other hand, "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." <u>Bielevicz</u>, 915 F.2d at 850. As a result, custom can be established by "proof of knowledge and acquiescence," <u>Fletcher v. O'Donnell</u>, 867 F.2d 791, 793-94 (3d Cir. 1989); <u>Unterberg</u>, 799 F.Supp. at 498.

In the case *sub judice,* Hampton may demonstrate deliberate indifference by proving that there is an established policy or custom which caused Corizon to deny or to delay access to necessary medical treatment for non-medical reasons. See <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05 (1976); <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999).

The only allegations against Corizon are as follows:

> Due to Defendant Corizon being concerned with the bottom line, instead of the care of Plaintiff, He was made to suffer from lack of funds to purchase meds from commissary, ***HOWEVER***, they was [sic] sure to collect their $5.00 co-payment fee.
>
> Defendant Corizon also has used a vendor with cheaper equipment that barely works to relieve pain and that falls apart easier. Plaintiff paid his co-payment for equipment that still case [sic] him pain.

7

(Doc. 13 ¶¶ 26, 27).

Importantly, the amended complaint lacks any facts to support Hampton's general conclusory statements that Corizon utilized inadequate methods of treatment simply to save money. Beyond these broadly worded conclusions, Hampton's amended complaint is devoid of <u>facts</u> demonstrating that Corizon's policies, customs, or practices led to deficient medical treatment. To the contrary, he names Corizon simply as the entity responsible for providing prison health services. Accordingly, Hampton's § 1983 claim against Corizon will be dismissed.

## IV. **Bernard and Koltay's Motion to Dismiss**

### A. **Constitutional Claims**

Hampton alleges that defendants' conduct violated his Eighth and Fourteenth Amendment rights. Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. <u>See</u> 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

<u>Id.</u>; <u>see</u> <u>also</u> <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 284-85 (2002); <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States,

8

and must show that the alleged deprivation was committed by a person acting under color of state law." West, 487 U.S. at 48.

        1.        <u>Eighth Amendment Deliberate Indifference to Medical Needs</u>

The Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. See Estelle, 429 U.S. at 103-05. In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale, 318 F.3d at 582 (citing Rouse, 182 F.3d at 197). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (citation omitted). A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. See Farmer v. Carlson, 685 F. Supp. 1335, 1339

(M.D. Pa. 1988); see also McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), *cert. denied*, 450 U.S. 1041 (1981).

Hampton alleges that defendants Bernard and Koltay were deliberately indifferent to his serious medical needs when they refused to order appropriate medical restrictions that would protect him from aggravating his injury and allow him to participate in the workout programs he desired; discontinued his prescription for extra strength Tylenol and, instead, advised him to purchase this medication through commissary; and, refused to re-issue his back and wrist braces after they were confiscated by prison staff. (Doc. 13). These claims will be addressed *seriatim*.

### a. *Failure to Order Medical Restrictions that Would Allow Hampton to Participate in Exercise Programs*

Defendants Bernard and Koltay assert that they were not personally involved in denying Hampton the right to participate in certain exercise programs. (Doc. 31, at 7). Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d at 1207-08; see also, Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate

10

particularity in that a complaint must allege specific conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

Hampton claims that he was placed on a medical restriction limiting his ability to engage in weightlifting exercises, so that he would not aggravate his back. (Doc. 13, ¶ 11). Defendant Bernard nevertheless encouraged him to stay active to strengthen his muscles, thereby alleviating some of his pain. (Id. at ¶ 10). When Hampton attempted to sign up for gym and cardio sessions, a prison staff member advised him that he could not participate unless and until his medical restrictions were lifted. (Id. at ¶¶ 12-13). Defendants Bernard and Koltay allegedly advised Hampton that he must agree to the removal of his medical restrictions if he wished to participate in these particular sessions. (Id. at ¶ 14). In an attempt to accommodate Hampton, the medical defendants changed his restriction to "Passive Sports Only." (Id. at ¶ 15). However, a prison staff member advised Hampton that the program policy rendered him ineligible to participate. Hampton does not allege that defendants Bernard and Koltay personally denied him the right to participate in these sessions, nor that they were involved in implementing the program policies. Moreover, Hampton does not assert that he was prevented from exercising. Indeed, Dr. Ekizian recommended physical therapy specifically designed to strengthen his back. (Id. at 8). Reviewing the allegations of the amended complaint, the court concludes that defendants Bernard and Koltay are entitled to dismissal of this claim

11

because they had no personal involvement in the denial of Hampton's requests to participate in certain exercise programs.

### b. *Discontinued Tylenol Prescription*

Hampton alleges that although Dr. Ekizian prescribed extra strength Tylenol, defendant Bernard refused to provide the medication, stating that Hampton could purchase Tylenol from the commissary. Hampton claims that he cannot afford to purchase Tylenol. Deliberate indifference may be evidenced by intentional refusal to provide care, denial of reasonable requests for treatment that result in suffering or risk of injury, or intentional interference with prescribed treatment. Estelle, 429 U.S. at 104; Farmer, 511 U.S. at 837 . For purposes of the instant motion to dismiss, Hampton has met this standard with regard to defendant Bernard's discontinuation of his prescription for Tylenol. Hampton alleges that he suffered from chronic back pain, and was prescribed[2] extra strength Tylenol by Dr. Ekizian. (Doc. 13, ¶ 19). At some point thereafter, defendant Bernard purportedly discontinued the prescription and instructed Hampton to purchase the medication from the commissary. Hampton plausibly alleges that defendant Bernard had specific knowledge of his need for pain medication, and refused to provide him the medication by discontinuing the prescription.

---

[2] Although not readily apparent from the record, it appears as though Dr. Ekizian prescribed an over the counter pain reliever. See (Doc. 31, Ex. A, at 166).

### c. *Refusal to Re-issue Back and Wrist Braces*

Hampton next claims that his back and wrist braces were confiscated by prison staff in the RHU, which caused him to suffer from pain and decreased activity level. (Doc. 13, ¶¶ 7, 8). Hampton alleges that defendants Bernard and Koltay refused to replace the braces without a confiscated items receipt. (Id. at ¶¶ 4, 6). Taken as true, these allegations sufficiently set forth a claim of deliberate indifference to Hampton's serious medical needs based upon the intentional denial of prescribed medical treatment. See White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990) (deliberate indifference may be manifested by "persistent conduct in the face of resultant pain and risk of permanent injury"). Therefore, defendants' motion to dismiss this claim for failure to state a claim upon which relief may be granted will be denied.

### 2. Fourteenth Amendment Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyer v. Doe, 457 U.S. 202, 216 (1982)). Classifications involving suspect or quasi-suspect class, or impacting certain fundamental constitutional rights, are subject to heightened or "strict" scrutiny. City of Cleburne, 473 U.S. at 439.

An equal protection claim can also be brought by a "class of one," a plaintiff alleging that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003); see also Jean-Pierre v. Bureau of Prisons, 497 F. App'x 164, 168 (3d Cir. 2012). If a distinction between persons does not implicate a suspect or quasi-suspect class, state action will be upheld if it is rationally related to a legitimate state interest. See Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 423 (3d Cir. 2000). Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended to discriminate. See Vill. of Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 264-66 (1977); Washington v. Davis, 426 U.S. 229, 242, 244-45 (1976). Thus, discriminatory intent must be a motivating factor in the decision, even though it need not be the sole motivating factor. See Vill. of Arlington Heights, 429 U.S. at 265-66. Moreover, to prove a lack of rational basis, a plaintiff must negate every conceivable rational basis for his differential treatment. See Bd. of Trustees v. Garrett, 531 U.S. 356, 367 (2001); Ramsgate Court Townhome Ass'n v. West Chester Borough, 313 F.3d 157, 160 (3d Cir. 2002).

Hampton claims that defendants violated his Fourteenth Amendment rights "by intentionally discriminating against [h]im and not treating him equal as everyone else." (Doc. 13, ¶ 32). Hampton has failed to allege any facts from which it can be concluded that defendants Bernard and Koltay engaged in intentional or purposeful discrimination or that he was treated differently than similarly situated

14

persons on the basis of his age, race, nationality or gender. Rather, Hampton complains about prison policies that affected all inmates similarly situated. He does not allege that the conduct was intentional, discriminatory treatment solely directed at him. Moreover, Hampton does not establish that defendants Bernard and Koltay, physician assistants, had any role in the establishment and maintenance of a policy, practice or custom that resulted in differential treatment of Hampton. Consequently, the Equal Protection claims against defendants Bernard and Koltay will be dismissed.

### B. Americans with Disabilities Act

Title II of the Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132(1). In order to establish a violation under Title II, a plaintiff must demonstrate: (1) that he is a qualified individual; (2) with a disability; and (3) that he was denied the opportunity to participate in or benefit from the services, programs, or activities of a public entity, or was otherwise subject to discrimination by that entity; (4) by reason of his disability. Bowers v. National Collegiate Athletic Ass'n, 475 F.3d 524, 553 n.32 (3d Cir. 2007). Individual defendants, however, are

not public entities within the meaning of Title II of the ADA and are, therefore, not subject to suit. Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002) (individuals are not subject to liability under "Titles I or II of the ADA, which prohibit discrimination by employers and public entities respectively."); Wesley v. Vaughn, 2003 U.S. Dist. LEXIS 4434 (E.D. Pa. 2003) (prison supervisors could not be made defendants in their individual capacities in a lawsuit in which plaintiff, a prisoner, alleged the individuals failed to accommodate plaintiff's need to avoid second hand smoke).

In the matter *sub judice*, defendants Bernard and Koltay argue that "Title II does not authorize suits against government officers in their individual capacities." (Doc. 31, at 19-20) (citations omitted). The court agrees. Hampton's ADA claim against defendants Bernard and Koltay will be dismissed.

## V. Conclusion

For the reasons set forth above, defendant Corizon's motion (Doc. 29) to dismiss will be granted. The motion (Doc. 30) to dismiss by defendants Bernard and Koltay will be granted in part and denied in part.

An appropriate order will issue.

                                          /S/ CHRISTOPHER C. CONNER
                                          Christopher C. Conner, Chief Judge
                                          United States District Court
                                          Middle District of Pennsylvania

Dated:       March 2, 2016